UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LAWRENCE HOLDINGS, INC., ET AL.,

       Plaintiffs,

v.                      Case No. 8:14-cv-1862-T-33EAJ

ASA INTERNATIONAL, LTD., ET AL.,

       Defendants.
_____/

**<u>ORDER</u>**

This matter comes before the Court pursuant to Defendants ASA International, LTD. (ASA), Khameleon Software, Inc. (Khameleon), ASA Automotive Systems, LLC (ASA Auto), ASA Properties, Inc. (ASA Properties), 10 Speen Street, LLC (Speen), Alfred C. Angelone (Angelone), Christopher Crane (Crane), and Terrence McCarthy's (McCarthy) Motion to Dismiss Plaintiffs' Complaint (Doc. # 27), filed on August 29, 2014. Plaintiffs Lawrence Holdings, Inc., Snappy Materials, LLC (Snappy), Tico Titanium, Inc. (Tico), Supra Alloys, Inc. (Supra), and Alloy Metals, Inc. (Alloy)[1] filed a response in opposition to the Motion on September 29, 2014. (Doc. # 41). Upon due consideration, the Court denies Defendants' Motion.

_____

[1]    For clarity, the Court will refer to all Plaintiffs collectively as LHI.

## I.   <u>Background</u>

At all relevant times, Defendants Angelone, Crane, and McCarthy owned or controlled several interrelated entities, including ASA, Khameleon, ASA Auto, ASA Properties, Speen and Verticent, Inc. – a non-party to this action. (Doc. # 1 at ¶¶ 23, 26, 29). "Although these entities were nominally separate and engaged in different lines of business, they generally worked together for the enrichment of their owners." (<u>Id.</u> at ¶ 26). An example of the control exercised by Angelone, McCarthy, and Crane included conducting monthly meetings attended by the ASA employees who were assigned to key functions in each of the operating divisions for the interrelated entities. (<u>Id.</u> at ¶ 29). At the monthly meetings, Angelone and Crane provided specific, detailed instructions to ASA employees about how to sell ASA products, which included Enterprise Resource Planning (ERP) software. (<u>Id.</u> at ¶¶ 30-32).

Although Verticent maintained its own separate checking account, the account was "regularly swept by ASA." (<u>Id.</u> at ¶ 36). All monies needed to pay operational expenses for Verticent were funded by ASA. (<u>Id.</u>). On information and belief, LHI submits that ASA distributed the money that it obtained from Verticent to Angelone, Crane, McCarthy, ASA

Properties, and Speen, as well as to fund operations at its other operating divisions, including Khameleon and ASA Auto. (Id.).

In accordance with the "enterprise" described above, Angelone, Crane, McCarthy, and ASA published claims that Verticent developed and could implement ERP software. (Id. at ¶ 40). In addition, claims were made that Verticent had developed, and had available for licensing, ERP software despite the fact that it did not. (Id.). The ASA employees assigned to the Verticent line of business described the strategy of selling products that they did not have as: "[w]e sell what we don't have to people who do not know what they want." (Id. at ¶ 43).

LHI specializes in "metals distribution and value-added processing, and, through its operating subsidiaries,[2] it has warehouse locations in California, Connecticut, Michigan and Texas." (Id. at ¶ 45). In the summer of 2006, LHI began researching software to integrate the databases of its four operating subsidiaries, so that information could be viewed and utilized on one single platform. (Id. at ¶¶ 45, 49). LHI

---

[2]    The operating subsidiaries include Snappy, Tico, Supra, and Alloy. (Doc. # 1 at ¶¶ 10-13).

contacted Verticent in response to advertisements stating that Verticent was a "leading provider of and specialist in information technology for the metals industry." (Id. at ¶ 46). Thereafter, LHI began discussions with Al Goniwich, Scott Cranford, Scott Galloway, and Todd Oullette – all employees of ASA – concerning the ERP software. (Id. at ¶ 47).

According to LHI, Goniwich, Cranford, Galloway, and Oullette stated that Verticent's ERP software had the capability of integrating the databases of the four operating subsidiaries, however, unbeknownst to LHI, it did not. (Id. at ¶ 49). Furthermore, Cranford and Oullette presented LHI with components of a software package that they claimed met industry standards for "multi-facility manufacturing and distribution functionality capabilities" and were fully integrated with a Verticent financial module. (Id. at ¶ 50). However, Verticent's actual software package did not have the capabilities that Cranford and Oullette promised during the demonstration. (Id.).

In October of 2006, LHI and Verticent entered into a software license agreement, a software maintenance agreement, and a professional services agreement for the development of an "Integrated Metals Enterprise Resource Planning" software

4

package. (Id. at ¶ 55). Despite his initial representation regarding the implementation deadline, Goniwich set an amended implementation completion date for Snappy and Alloy of March 13, 2007, May 1, 2007, for Supra, and Tico would follow thereafter. (Id. at ¶ 59).

Goniwich claimed that the longer timeline, and subsequent cost, was necessary to accommodate the ERP software customization needed to suit LHI's unique needs. (Id. at ¶ 60). According to LHI, Goniwich knew that further customization would not change the fact that the ERP software did not work. (Id.). "Still under the direction of Angelone, Crane, and McCarthy, [Goniwich] continued to represent that the ERP [s]oftware would work." (Id.).

By late 2007, the ERP software still did not work. (Id. at ¶ 61). In response to LHI's frustrations, Goniwich, Oullette, Cranford, and Galloway "pretended to be" surprised despite knowing that the ERP software did not work and having relayed the status of the implementation to McCarthy, Angelone, and Crane at monthly meetings. (Id.). However, LHI submits that these individuals advised that ASA employees should continue to "go through the motions" of an installation in order to keep LHI paying monthly license and other fees. (Id.).

Throughout late 2007 and 2008, ASA employees continued to offer LHI false explanations for the delay in implementation of the ERP software. (Id. at ¶ 62). "During this time, repeated efforts to go live with various databases were made, each time ending in failure and with the explanation that further investigation, modification and fees would be required." (Id.). Thereafter, from 2008 through 2010, ASA employees continued to make misrepresentations regarding the ERP software and state that further modifications, including upgrading the software, at additional costs, were required. (Id. at ¶¶ 63-80). Furthermore, the documentation provided to LHI during this time was intentionally confusing to leave LHI without the ability to understand that Verticent did not have ERP software that worked and had no intention of acquiring it. (Id. at ¶¶ 73-75). Nonetheless, in reliance on ASA employees' statements concerning the capabilities of the ERP software, LHI continued to make payments to Verticent. (Id. at ¶ 80).

By December of 2010, the ERP software still did not work. (Id. at ¶ 78). However, Goniwich continued "to represent that an ever-decreasing number of action items were needed to be completed for the ERP [s]oftware to work." (Id.). Thereafter, Goniwich and Oullette abruptly disappeared. (Id.). In their

place, Kent Johnson, David Morgenstern, and Omar Peraza began to handle the LHI project. (Id.).

In May of 2011, Lawrence Buhl and others – on behalf of LHI – met with Johnson and Morgenstern to discuss the continued failure of the ERP software. (Id. at ¶ 79). Johnson and Morgenstern represented that a change in management was made and that they would quickly and efficiently address all outstanding items in order to deliver the ERP software as promised. (Id.). Morgenstern admitted that Verticent had "committed many mistakes in the past," but he contended that "the new management in place had 'made great changes and progress.'" (Id.). In reality, and unbeknownst to LHI, nothing had changed and no progress had been made on the implementation of the ERP software. (Id.).

"Still having spent over $1 million on the ERP software and in reliance on the forgoing change in management and assurances of Morgenstern, Johnson and Peraza, LHI continued to work with and pay Verticent." (Id. at ¶ 80). In February of 2012, Verticent filed for bankruptcy. (Id. at ¶ 81).

LHI initiated this action on August 1, 2014, alleging violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq*. and various state law claims. (See Doc. # 1). LHI alleges that

Defendants had a scheme to "milk money" from the metal distribution industry through mail and wire fraud by selling an integrated software program to LHI, and other companies,[3] knowing it would never work and then having Verticent file for bankruptcy. (See Id.). Defendants filed the present Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on August 29, 2014. (Doc. # 27). LHI filed a response in opposition to the Motion on September 29, 2014. (Doc. # 41). The Court has reviewed the Motion and the response thereto and is otherwise fully advised in the premises.

## II.  **Legal Standard**

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the]

---

[3]    According to the Complaint, these companies include Paragon Steel Enterprises, LLC, Norman Industrial Materials, Inc. d/b/a Industrial Metal Supply, Co., CRP Steel, Frictl, Loren Industries, Amsco Steel, Peachtree Metals, Willbanks, National Tube Supply, Middletown Tube, Monarch Steel, and Howard Precision. (Doc. # 1 at ¶¶ 92-103).

complaint and all reasonable inferences therefrom are taken as true."). However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

### III. Defendants' Request That This Court Take Judicial Notice of Material for Inclusion in Motion to Dismiss Analysis

On August 29, 2014, Defendants filed a Request for Judicial Notice. (Doc. # 28). Defendants request that this Court take notice (1) that non-party Verticent filed bankruptcy on November 12, 2012, in the United States Bankruptcy Court, Middle District of Florida, Case No. 8:12-bk-16823-CPM, (2) that LHI filed a Proof of Claim on February 13, 2013, in the United States Bankruptcy Court, Middle District of Florida, Case No. 8:12-bk-16823-CPM, and (3) of three written agreements identified by LHI in the Complaint.

(Id.; see Doc. # 1 at ¶ 55). Defendants attached the relevant documents to their Request. (Doc. # 28-1).

Federal Rule of Evidence 201(b) allows a court to take judicial notice of facts that are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "The Court may take judicial notice at any point in the proceeding, including during a motion to dismiss." In re ING Groep, N.V. Erisa Litig., 749 F. Supp. 2d 1338, 1344 (N.D. Ga. 2010). "When deciding a motion to dismiss, the Court must limit its consideration to well-pleaded factual allegations, judicially noticed matters, and documents central to or referenced in the complaint." Id. (citing La Grasta v. First Union Sec. Inc., 358 F.3d 840, 845 (11th Cir. 2004)).

"Public records are among the permissible facts that a district court may consider." Universal Express, Inc. v. United States S.E.C., 177 F. App'x 52, 53 (11th Cir. 2006); see In re Gurley, 357 B.R. 868, 878 (Bankr. M.D. Fla. 2006)("A court in determining a Rule 12(b)(6) motion may take judicial notice of the public record including documents filed and the record in other judicial proceedings, without converting the motion to dismiss to one for summary judgment, because such

documents are capable of accurate and ready determination."
(internal quotations omitted)).

Here, Verticent filing for bankruptcy as well as the
Proof of Claim filed by LHI are part of the public record,
and therefore, this Court may consider the referenced
documents in its analysis of the present Motion. Furthermore,
as to the three written agreements, the Court notes that LHI
references these agreements within the Complaint. (Doc. # 1
at ¶ 55). Thus, the Court finds that they are "central to or
referenced in the Complaint," and as a result, this Court may
take judicial notice of these agreements at this time.

LHI's response in opposition to Defendants' Motion to
Dismiss is devoid of any argument as to why this Court should
not take judicial notice of the requested documents. (See
Doc. # 41). The only opposition is contained within
Defendants' Request, specifically, the Local Rule 3.01(g)
certification section: "Pursuant to Rule 3.01(g) of the Local
Rules, [Defendants' counsel] has conferred with counsel for
[LHI] and is authorized to represent that [LHI] oppose[s]
this Request." (See Doc. # 28). Therefore, the Court grants
Defendants' Request and will take judicial notice of the
referenced material for purposes of the present analysis.

**IV.  <u>Analysis</u>**

In their present Motion, Defendants seek dismissal of the Complaint for a plethora of reasons. The Court will address each in turn.

## A. **Purpose of RICO**

Defendants seek dismissal of LHI's RICO claims as they submit that "[t]he purpose of RICO is to eradicate organized crime not provide civil remedies for garden variety breach of contract or common law fraud claims" between two sophisticated businesses, like the claims brought by LHI. (Doc. # 27 at 11-12). To support their contention, Defendants rely on a 1970 United States Congressional statement of findings and purpose for RICO, which states in relevant part: "It is the purpose of this Act to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." (Id. at 12).

LHI contends, however, that Defendants ignore "well-settled decisions of the Supreme Court and of Courts in the Eleventh Circuit, including this Court, that have repeatedly refused to limit the scope of RICO based claims on Congressional purpose." (Doc. # 41 at 8); see Sedima S.P.R.L.

v. Imrex Co., Inc., 473 U.S. 479, 497 (1985)(stating that "RICO is to be read broadly."); King v. Gandolfo, 714 F. Supp. 1180, 1182 (M.D. Fla. 1989)("This Court is not at liberty to restrict legislation passed by Congress so as to do violence to the plain language of the statute, in direct countervention of binding United States Supreme Court authority."); United States v. Noriega, 746 F. Supp. 1506, 1517 (S.D. Fla. 1990) aff'd, 117 F.3d 1206 (11th Cir. 1997)("The legislative history leaves no doubt that RICO was to be read expansively as a means of attacking organized crime at every level and on an unprecedented scope."); Special Purpose Accounts Receivable Co-op. Corp. v. Prime One Capital Co., 202 F. Supp. 2d 1339, 1346 (S.D. Fla. 2002)("The United States Supreme Court repeatedly has rejected the argument that RICO should be narrowly construed as a per se exclusion of business disputes.").

This Court disagrees with Defendants' contention that RICO was not intended to protect against the allegations set forth in LHI's Complaint. Instead, as case law indicates, the RICO statute is to be "read broadly" to encompass "every day fraud cases," as those brought by LHI. See Sedima S.P.R.L., 473 U.S. at 499 ("Instead of being used against mobsters and organized criminals, [RICO] has become a tool for everyday

fraud cases brought against 'respected and legitimate enterprises.'"). Thus, Defendants' Motion is denied as to this ground.

**B. Whether LHI's Complaint is a "Shotgun Pleading"**

According to Defendants, the Complaint constitutes a "shotgun pleading." (Doc. # 27 at 10). Namely, Defendants argue that:

> The Complaint comprises 171 numbered paragraphs spread over 34 pages. The reader must plow through the first 107 paragraphs before reaching the first of seven causes of action. These introductory 107 paragraphs contain pages of "rambling irrelevancies" and immaterial factual allegations. Each succeeding cause of action then incorporates all of the allegations of the cause of action that preceded it. To attempt analysis of any cause of action requires one to hunt and peck through the 107 introductory paragraphs to determine what allegations are necessary to complete the legal predicates of each claim. Analysis of each succeeding cause of action only becomes more burdensome and confusing.

(Id.)(citing Magluta v. Samples, 256 F.3d 1282 (11th Cir. 2001)).

In Magluta, the Eleventh Circuit found the operative complaint to be a "quintessential 'shotgun' pleading." Magluta, 256 F.3d at 1284. In finding so, the Court noted that:

> [The complaint] is fifty-eight pages long. It names
> fourteen defendants, and all defendants are charged
> in each count. The complaint is replete with
> allegations that "the defendants" engaged in
> certain conduct, making no distinction among the
> fourteen defendants charged, though geographic and
> temporal realities make plain that all of the
> defendants could not have participated in every act
> complained of. Each count incorporates by reference
> the allegations made in a section entitled "General
> Factual Allegations" — which comprises 146 numbered
> paragraphs — while also incorporating the
> allegations of any count or counts that precede it.
> The result is that each count is replete with
> factual allegations that could not possibly be
> material to that specific count, and that any
> allegations that are material are buried beneath
> innumerable pages of rambling irrelevancies. This
> type of pleading completely disregards Rule 10(b)'s
> requirement that discrete claims should be plead in
> separate counts, and is the type of complaint that
> we have criticized time and again.

Id. (internal citations omitted). As a result, the Eleventh

Circuit vacated the district court's judgment dismissing the

complaint for failure to state a claim and remanded the action

with instructions that the district court require the

plaintiff to replead his claims. Id. at 1284-85. According to

Defendants, LHI's Complaint "duplicates all of the failings

articulated in Magluta and should either be dismissed or

ordered to be [repled] on that account." (Doc. # 27 at 11).

        LHI argues, however, that it has satisfied its pleading

burden by "balancing the need for a short, plain statement under Rule 8 with the heightened requirement of Rule 9." (Doc. # 41 at 10). Furthermore, LHI posits that <u>Magluta</u> is distinguishable from the instant action as <u>Magluta</u> did not involve allegations of fraud. (<u>Id.</u>). As a result, <u>Magluta</u> did not consider the heightened pleading requirements imposed by Rule 9(b) or the interplay of those standards with the notice pleading requirements of Rule 8. (<u>Id.</u>).

This Court agrees. In the instant action, not only is LHI required to satisfy Rule 8, it must also satisfy the heightened pleading requirement of Rule 9(b), which was not required of the plaintiff in <u>Magluta</u>. To the extent Defendants argue that "[a]nalysis of each succeeding cause of action only becomes burdensome and confusing," the Court is unpersuaded. The detail contained in the "171 numbered paragraphs spread over 34 pages," is necessary in order for LHI to satisfy Rule 9(b)'s pleading requirement, specifically, the introductory paragraphs that contain allegations attempting to set forth Defendants' pattern of racketeering. Therefore, the Court finds that the Complaint is not a "shotgun pleading." Rather, as stated by LHI, Defendants are "more than able to frame a responsive pleading" to the allegations contained in the Complaint. (Doc. # 41 at

10). Accordingly, the Court denies Defendants' Motion on this ground and will address whether LHI satisfied Fed. R. Civ. P. 8(a) and 9(b) in further detail.

### C. **Failure to Satisfy Fed. R. Civ. P. 8(a)**

Under Fed. R. Civ. P. 8(a), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . .

Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (internal citations omitted). In this action, LHI brings RICO claims pursuant to 18 U.S.C. §§ 1962(c), 1962(d), 1964(c), and 1964(d). (See Doc. # 1).

To establish a claim for a federal civil RICO violation under Section 1962(c), LHI must establish "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Williams v. Mohawk Indus. Inc., 465 F.3d 1277, 1282 (11th Cir. 2006) (internal quotation omitted). In addition, LHI must satisfy the requirements of Section

1964(c), which requires (1) a showing of an injury to "business or property," and (2) that such injury was "by reason of" the substantive RICO violation. Id.; 18 U.S.C. § 1964(c).

Section 1962(d) of the RICO statutes makes it illegal for anyone to conspire to violate one of the substantive provisions of RICO, including § 1962(c). 18 U.S.C. § 1962(d). "A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts." Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 950 (11th Cir. 1997). A plaintiff need not offer direct evidence of a RICO agreement; the existence of conspiracy "may be inferred from the conduct of the participants." Id.

Defendants contend that LHI has failed to state a claim upon which relief can be granted as the Complaint: (1) fails to plead a pattern of racketeering, (2) fails to plead an association-in-fact enterprise, and (3) fails to allege proximate cause. (See Doc. # 27). The Court will address each contention in turn.

### 1. Pattern of Racketeering

According to Defendants, LHI's allegations do not

constitute a "pattern of racketeering." (Id. at 19). "A 'pattern of racketeering activity,' for purposes of the RICO Act, 'requires at least two acts of racketeering activity.'" 18 U.S.C. § 1961(5); Cox v. Adm'r United States Steel & Carnegie, 17 F.3d 1386, 1397 (11th Cir. 1994), modified on other grounds by 30 F.3d 1347 (11th Cir. 1994). A Racketeering activity, in turn, is defined as a violation of any of a number of statutes listed in Section 1961(1). 18 U.S.C. § 1961(1). These include the federal statutes prohibiting mail and wire fraud. Id. "An act of racketeering is commonly referred to as a 'predicate act.'" Mohawk Indus., Inc., 465 F.3d at 1283.

"The term pattern itself requires the showing of a relationship between predicates, and of the threat of continuing activity." H.J., Inc. v. NW Bell Tel. Co., 492 U.S. 229, 239 (1989)(internal quotations and citations omitted). With respect to the relationship element, "the predicate acts must have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise be interrelated by distinguishing characteristics and . . . not be isolated events." United States v. Lynch, 287 F. App'x 66, 68 (11th Cir. 2008)(internal quotations omitted). In regard to the continuity element, "[a] party

alleging a RICO violation may demonstrate continuity over a closed period by providing a series of predicates extending over a substantial period of time." H.J., 492 U.S. at 241-42. "The threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." Id. at 242.

According to Defendants, LHI failed to adequately allege a pattern of racketeering and instead has only alleged a single scheme (i.e., "to sell a piece of software that allegedly does not work and then to file bankruptcy"). (Doc. # 27 at 20). In addition, Defendants argue that the allegation of a single scheme entails only a single discrete injury – payment for ERP software that did not work – which was suffered by a small number of victims. (Id.). This combination of factors, makes it "virtually impossible for [LHI] to state a RICO claim." (Id.)(citing Sil-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1516 (10th Cir. 1990)(holding that multiple predicate acts failed to show a pattern where the acts "constituted a single scheme to accomplish 'one discrete goal,' directed at one individual with no potential to extend to other persons or entities.")).

However, LHI argues that the Complaint demonstrates that "an elaborate fraud took place over the last six years and

multiple episodes." (Doc. # 41 at 15; Doc. # 1 at ¶¶ 45-103).
Specifically, ASA's employees sold LHI ERP software that the
Defendants knew did not work. (Doc. # 41 at 15). Then,
Defendants proceeded to go "through the motions of
implementing ERP software, even though they knew they could
never be successful." (Id. at 15-16). When LHI complained,
Defendants "doubled down by persuading LHI to pay more money,
and allow more time, to fix the problems." (Id. at 16).
According to LHI, these repeated actions were also directed
at several other companies, which demonstrates a clear
pattern of past conduct that posed a threat of continuation
into the future. (Id.); see Jones v. Childers, 18 F.3d 899,
912-13 (11th Cir. 1994)(finding that plaintiffs established
pattern of RICO activity based on defendants' business
practices where defendants defrauded five similar victims
over five year period).

Upon review of the Complaint, the Court finds that this
case does not involve only a "single transaction," as
suggested by Defendants. Instead, taking the allegations as
true, Defendants implemented a plan, spanning six years, to
allegedly defraud LHI and several other companies. In doing
so, Defendants engaged in similar practices – selling
software knowing that it did not work and continuing to

persuade the buyer that more time, and payment, was necessary. At this stage of the proceeding, this Court finds that such activity satisfies the relationship and continuity elements necessary to demonstrate a pattern of racketeering. Therefore, for purposes of the present analysis only, the Court finds that LHI has adequately demonstrated a pattern of racketeering.

### 2. Association-in-Fact Enterprise

In Counts One and Two of the Complaint, LHI pleads an "association-in-fact enterprise." (See Doc. # 1). Pursuant to 18 U.S.C. § 1961(4), an enterprise for purposes of a RICO claim may include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." However, "merely alleging that the 'Defendants conspired with each other and with others . . .' does not allege an enterprise." Palm Beach Cnty. Envtl. Coalition v. Fla., 651 F. Supp. 2d 1328, 1349 (S.D. Fla. 2009). Instead, "the existence of an enterprise is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." Mohawk Indus., Inc., 465 F.3d at 1284. "[T]he definitive factor in

determining the existence of a RICO enterprise is the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes." Id. In the Eleventh Circuit, the "person" and the "enterprise" cannot be the same. United States v. Goldin Indus., Inc., 219 F.3d 1271, 1276 (11th Cir. 2000).

As stated in United States v. Turkette, an association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." 452 U.S. 576, 583 (1981).

> Such a group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods — by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence. Nor is the statute limited to groups whose crimes are sophisticated, diverse, complex, or unique; for example, a group that does nothing but engage in extortion through old-fashioned, unsophisticated, and brutal means may fall squarely within the statute's reach.

Boyle v. United States, 556 U.S. 938, 948 (2009).

Defendants seek dismissal of Counts One and Two based on their contention that "Plaintiffs are in fact alleging that the persons liable are the same as the alleged enterprise. That is improper." (Doc. # 27 at 21). To that end, Defendants suggest that "Plaintiffs have failed to provide any explanation for the roles played by any of Defendants outside the enterprise." (Id.).

According to LHI, however, "Defendants misunderstand the nature of an association-in-fact enterprise and RICO actors' roles therein." (Doc. # 41 at 13). LHI posits that "[t]he very concept of an association-in-fact is expansive." (Id. at 14)(quoting Boyle, 556 U.S. at 944). "An association-in-fact can exist in the absence of a formally structured group." (Id.)(quoting United States v. Young, 906 F.2d 615, 619 (11th Cir. 1990)). Therefore, LHI states that "[t]he need for two distinct entities is satisfied 'when a corporate employee unlawfully conducts the affairs of the corporation of which he is the sole owner – whether he conducts those affairs within the scope, or beyond the scope, of corporate authority.'" (Id.)(quoting Associated Indus. Ins. Co., v. Advanced Mgmt. Servs., Inc., No. 12-80393-civ, 2014 WL 1237685, at *4). An association-in-fact enterprise requires only "an ongoing organization, formal or informal, and

evidence that the various associates function as a continuing unit." (Id.)(quoting In re Managed Care Litig., 298 F. Supp. 2d 1259, 1273 (S.D. Fla. 2003)).

LHI submits that it has established an ongoing organization – controlled primarily by Angelone, Crane, and McCarthy – whose participants functioned as a continuing unit for the common purpose of allegedly defrauding LHI and other companies. (Id.; Doc. # 1 at ¶¶ 26-36, 90-91). Specifically, as described by LHI in its response, "[t]he enterprise is the informal organization that consists of all of the Defendants – the 'whole.' However, like any enterprise, it can act only through its members – its parts – who are the participants in the enterprise. Here, the enterprise acts through its members – the Defendants." (Doc. # 41 at 14); see Associated Indus., 2014 WL 1237685, at *4 (finding that the individual and corporate entities formed an enterprise with sufficient separateness to satisfy RICO).

The Court notes that questions of distinctiveness between RICO actors and an enterprise present "a fact-intensive inquiry." AstroTel, Inc. v. Verizon Fla., LLC, No. 8:11-CV-2224-T-33TBM, 2012 WL 3670398, at *4 (M.D. Fla. Aug. 27, 2012); Lockheed Martin Corp. v. Boeing Co., 314 F. Supp. 2d 1198, 1212 (M.D. Fla. 2004)("distinctness is a fact-

intensive inquiry that is not driven solely by formal legal relationships.").

Thus, the Court determines that at this time it is appropriate to deny the Motion on this ground and allow this case to proceed to the summary judgment stage. Defendants' fact-intensive arguments are better suited for disposition under Fed. R. Civ. P. 56, with reference to the materials on file obtained during discovery.

### 3. <u>Proximate Cause</u>

RICO plaintiffs must prove proximate causation in order to recover. <u>Anza v. Ideal Steel Supply Corp.</u>, 547 U.S. 451 (2006); <u>Super Vision Int'l, Inc. v. Mega Int'l Commercial Bank Co.</u>, 534 F. Supp. 2d 1326, 1339 (S.D. Fla. 2008)(finding that the plaintiff has the burden of proving that he "relied to his detriment on the defendant's misrepresentations made in furtherance of that scheme.").

"When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." <u>Anza</u>, 547 U.S. at 461. Although plaintiffs are not required to show that the injurious conduct is the sole cause of the injury asserted, there must be "some direct relation" between

the injury alleged and the injurious conduct in order to show proximate cause. Id. at 464.

Defendants argue that LHI failed to allege sufficient facts showing that it was harmed by the alleged RICO violations. (Doc. # 27 at 21). To wit:

> Plaintiffs allege that Plaintiffs agreed to enter into the Software Agreements based upon Defendants' in person presentation. According to Plaintiffs, the damage was done at that point because Plaintiffs contend the Defendants knew all along that the software did not work and would never work. The various emails and mailed invoices months later fail to show that Plaintiffs were harmed by the predicate acts more than they had already been harmed by the initial misrepresentations when they entered into the Software Agreements.

(Id.)(internal citation omitted).

Conversely, LHI posits that it paid Defendants additional sums of money as a result of the fraudulent statements Defendants made at various times between 2006 and 2012. (Doc. # 41 at 17; Doc. # 1 at ¶¶ 75, 80, 87-89, 107). Therefore, LHI submits that "[t]he remittance of money in reliance on fraudulent statements is sufficient at this stage to establish proximate causation." (Doc. # 41 at 17).

Upon review of the Complaint, LHI's allegations demonstrate that Defendants made several alleged misrepresentations to LHI after LHI entered into the software

agreements. (Doc. # 1 at ¶¶ 61-80). These misrepresentations include claims that additional customization, at an additional cost, was required to have the ERP software meet LHI's needs. (Id.). Based on these allegations, taking them as true, the Court finds that a nexus exists between LHI's alleged injury and Defendants' alleged RICO violations. Thus, at this stage of the proceedings, LHI has sufficiently alleged proximate cause. See Mohawk Indus., Inc., 465 F.3d at 1287-89 (finding that the plaintiffs sufficiently alleged proximate cause to withstand defendant's motion to dismiss as plaintiffs alleged a direct relation between their claimed injury and the alleged RICO violations). Accordingly, for the reasons set forth above, LHI has satisfied Fed. R. Civ. P. 8(a), and as a result, Defendants' Motion is denied on this ground.

### D. **Failure to Comply with Fed. R. Civ. P. 9(b)**

Fraud-based claims must be pled with the heightened level of particularity required by Fed. R. Civ. P. 9(b). Oginsky v. Paragon Props. of Costa Rica LLC, 784 F. Supp. 2d 1353, 1362 (S.D. Fla. 2011)("RICO predicate acts sounding in fraud must be pled with the heightened level of specificity required by Federal Rule of Civil Procedure 9(b) for fraud claims generally."); Liquidation Comm'n of Banco

28

_Intercontinental v. Renta_, 530 F.3d 1339, 1355 (11th Cir.
2008)(finding that fraud-based predicate acts must be pled
with specificity, but non-fraud predicate acts need only meet
Rule 8 pleading standard)). Pursuant to Fed. R. Civ. P. 9(b),
"[i]n alleging fraud or mistake, a party must state with
particularity the circumstances constituting fraud or
mistake. Malice, intent, knowledge, and other conditions of
a person's mind may be alleged generally." Fed. R. Civ. P.
9(b).

To comply with Rule 9(b), RICO complaints alleging fraud
must state: "(1) the precise statements, documents, or
misrepresentations made, (2) the time and place of and person
responsible for the statement, (3) the content and manner in
which the statements misled the [p]laintiffs, and (4) what
the Defendants gained by the alleged fraud." _Ambrosia Coal &
Constr. Co. v. Morales_, 482 F.3d 1309, 1316–17 (11th Cir.
2007). Where "the alleged fraud occurred over an extended
period of time and the acts were numerous, the specificity
requirements are applied less stringently." _MeterLogic, Inc.
v. Copier Solutions, Inc._, 126 F. Supp. 2d 1346, 1360-61 (S.D.
Fla. 2000).

"Additionally, plaintiff must allege facts regarding
defendants' intent or knowledge. These allegations need only

29

give rise to a strong inference that the defendants possessed the requisite fraudulent intent." Magnifico v. Villanueva, 783 F. Supp. 2d 1217, 1228 (S.D. Fla. Apr. 27, 2011). However, "conditions of a person's mind, such as intent or knowledge, may be alleged generally." Barnett v. Blaine, No. 11-14345-CIV, 2013 WL 1001963, at *2 (S.D. Fla. March 13, 2013).

A plaintiff must show the following elements to establish liability under the federal wire and mail fraud statutes: "(1) that defendants knowingly devised or participated in a scheme to defraud plaintiffs, (2) that they did so willingly with the intent to defraud, and (3) that the defendants used the U.S. mails or the interstate wires for the purpose of executing the scheme." Langford v. Rite Aid of Ala., Inc., 231 F.3d 1308, 1312 (11th Cir. 2000).

Defendants suggest that, "the Complaint fails to demonstrate the required level of factual specificity to establish RICO liability on any Defendant." (Doc. # 27 at 9). Specifically, Defendants contend that LHI fails to specify each Defendants' role in each predicate act and how each caused damage to each particular Plaintiff. (Id. at 16-19).

According to Defendants, in a case involving multiple defendants, as in the instant action, the complaint must not lump together all of the defendants, as "the complaint should

inform each defendant of the nature of his alleged participation in the fraud." (Id.)(citing Ambrosia, 482 F.3d at 1317). However, Defendants argue that LHI did not appropriately separate and identify claims as to each Defendant. (Id.). Particularly, Defendants aver that LHI made "generalized conclusory allegations regarding the use of the United States' mail and wires in the fraudulent scheme," "without identifying who used the mail or wire, when the mail or wire was used, and how the use related to the furtherance of the fraudulent scheme, other than in the most generic terms." (Id.).

Moreover, Defendants submit that LHI has "not pled a fraudulent scheme or artifice from which specific intent can be inferred, nor has [LHI] specifically pled specific intent as to each Defendant." (Id. at 19)(citing Blu-J, Inc. v. Kemper C.P.A. Grp., 916 F.2d 637, 643 (11th Cir. 1990)(finding that fraudulent intent is also necessary to establish mail and wire fraud as predicate acts of civil RICO actions)). Finally, Defendants provide that the corpus of LHI's substantive allegations regarding the fraudulent scheme are based "on information and belief." (Id.). Defendants suggest that "such pleading is insufficient to support a fraudulent scheme," as a plaintiff who makes allegations on information

and belief must state the factual basis for the belief. (Id.)(citing United States ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1310 (11th Cir. 2002)). According to Defendants, the only attempt by LHI to meet this requirement is to include the allegation that LHI received information from "ASA employees." (Id.).

Upon review of the Complaint, the Court determines that LHI has satisfied the heightened pleading standard of Fed. R. Civ. P. 9(b). The Complaint identifies the specific individuals involved, the content and purpose of particular fraudulent statements and, where possible, their dates, as required by Fed. R. Civ. P. 9(b). See Walgreen Co. v. Premier Prods. Of Am., Inc., No. 8:11-cv-812-T-33MAP, 2012 WL 527169, at *4 (M.D. Feb. 17, 2012)(holding that the complaint sufficiently pled mail and wire fraud based on series of false invoices over 13-month period); MeterLogic, 126 F. Supp. 2d at 1361 (finding plaintiff "need not provide the exact time and place of all the meetings" where it provided specific information for some of the fraudulent statements and where fraud occurred over extended time). The Complaint alleges that Defendants devised a scheme to defraud LHI and other companies by pretending to sell ERP software and then used the installation process as a vehicle to require further

payment. (See Doc. # 1 at ¶¶ 45-103). The Complaint identifies many of the precise misrepresentations that Defendants made, including their time, place, substance, the individuals involved, and how the statements misled LHI. (Id. at ¶¶ 60-80).

Further, as provided by LHI "the Complaint identifies many specific uses of mail and wires in communications where Defendants maintained the charade of trying to implement a non-existent software package." (Doc. # 41 at 12; Doc. # 1 at ¶¶ 64, 66, 68, 72, 74, 78). For example, "the Complaint identifies at least 11 separate invoices sent to LHI via the U.S. mail, which is how LHI suggests that Defendants benefitted from their fraud." (Doc. # 41 at 12; Doc. # 1 at ¶ 88). Moreover, this Court notes that the Complaint specifically alleges that Defendants intended to defraud LHI. (Doc. # 1 at ¶¶ 1-4, 113, 133). LHI alleges that "Angelone, Crane, and McCarthy (a) had a philosophy of selling products they did not have, (b) knew that the [s]oftware did not work, (c) instructed employees to sell it anyway, and (d) instructed employees on ways to allay customers' concerns." (Doc. # 41 at 13; Doc. # 1 at ¶¶ 26-36). Accordingly, these allegations provide a sufficient basis for the Court to infer specific intent on behalf of Defendants.

33

Finally, in regards to Defendants' argument that LHI bases many of its allegations on information and belief, the Court notes that, in general, Rule 9(b)'s heightened pleading standard is applied less stringently when "specific factual information [about the fraud] is peculiarly within the defendant's knowledge or control." Kindred Hosp. East, LLC v. Fox-Everett, Inc., No. 3:12-cv-307-J-37MCR, 2012 WL 5467516, at *4 (M.D. Fla. Oct. 4, 2012). In the Complaint, LHI acknowledges that several allegations are based on statements made by former ASA employees who, at various times, were responsible for the Verticent line of business.

As set forth in LHI's response:

> [M]any allegations relate to Defendants' internal meetings, where LHI was discussed, and to the instructions that Angelone, Crane, and/or McCarthy gave to ASA employees at or following those meetings. Obviously, LHI was not at those meetings. Thus, it has alleged facts based on information and belief. LHI has knowledge about how business was conducted at ASA generally based on discussions with former ASA employees.

(Doc. # 41 at 13)(internal citation omitted).

The Complaint describes ASA's general business practices and alleges that those practices applied to Defendants' dealings with LHI. That is, from a review of the Complaint, LHI includes a clear statement of the facts on which its

belief is founded sufficient to satisfy Fed. R. Civ. P. 9(b).
As a result, Defendants' Motion is denied as to this ground.
The Court notes, however, that Defendants will have the
opportunity through discovery to depose the ASA employees
that provided LHI with the relied upon information.

**E. Subsidiaries Fail to State a Claim**

According to Defendants:

At paragraphs 9 through 13, Plaintiffs identify the
five Plaintiffs in sequential order as: LHI,
Snappy, Supra, Tico, and Alloy. LHI is the parent
company of the other Plaintiffs which are
subsidiaries of LHI. Plaintiffs state at paragraph
14: "Throughout the Complaint, LHI and its
operating subsidiaries are referred to collectively
as '**LHI**' unless a distinction is necessary." The
Complaint contains no designation of LHI in bold
type thereafter, particularly in the damage
allegations. Damage allegations begin with
paragraph 87. . . .

\* \* \*

Paragraph 87 only specifies damages to LHI and not
the collective "LHI."

\* \* \*

There is no allegation in the Complaint that any of
the subsidiary Plaintiffs suffered any such losses.
Absent allegations of specific damages tied to acts
of wrongdoing, none of the subsidiary Plaintiffs
[have] stated a claim upon which relief can be
granted and the Complaint should be dismissed as to
these four Plaintiffs.

(Doc. # 27 at 12-13)(emphasis in original).

LHI responds, however, that each Plaintiff has adequately stated a claim. (Doc. # 41 at 15). Namely, LHI argues that in the Complaint it defined shorthand terms for convenience, including the term "LHI," which refers to all Plaintiffs: "When [LHI] defined terms, [it] initially used bold text to call attention to them but did not do so through the remainder of the Complaint." (Id.). LHI avers that "the only reasonable inference here is that Plaintiffs intended to assert claims on all of their behalf." (Id.). This Court agrees. LHI used bold text the first time it referenced LHI to make it clear that it was a defined term, and its failure to use bold text throughout the remainder of the Complaint does not, on its own, illustrate that the four subsidiaries failed to state a claim upon which relief can be granted. Therefore, the Court declines to adopt Defendants' position on the matter, and as a result, Defendants' Motion on this ground is denied.

## F. **Statute of Limitations**

Defendants seek dismissal of LHI's RICO claims contending that they are time-barred by the applicable statute of limitations. (Doc. # 27 at 13). While a statute-

of-limitations defense may be raised in a motion to dismiss under Fed. R. Civ. P. 12(b)(6), such a motion should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Abdul-Alim Amin v. Universal Life Ins. Co. of Memphis, Tenn., 706 F.2d 638, 640 (5th Cir. 1983). "The statute of limitations for civil RICO actions is four years" Lehman v. Lucom, 727 F.3d 1326, 1330 (11th Cir. 2013), and it begins to run "when the injury was or should have been discovered, regardless of whether or when the injury is discovered to be part of a pattern of racketeering." Maiz v. Virani, 253 F.3d 641, 676 (11th Cir. 2001).

However, RICO actions allow for the "separate accrual rule." Lehman, 727 F.3d at 1330-31. "The rule provides that if a new RICO predicate act gives rise to a new and independent injury, the statute of limitations clock will start over for the damages caused by the new act." Id. at 1331. At the same time, however, the "plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." Id. By extension, when an injury is a "continuation of [an] initial injury," it "is

not new and independent." <u>Pilkington v. United Airlines</u>, 112

F.3d 1532, 1537–38 (11th Cir. 1997).

According to Defendants, LHI's RICO injuries arise from

the purchase of ERP software from Verticent in October of

2006. (Doc. # 27 at 14). Specifically:

> The injuries alleged are direct financial losses
> from the payment of additional sums of money,
> losses resulting from business interruption and
> other distinct losses because the computer software
> never worked. Plaintiffs identify injuries to
> Plaintiffs' business throughout 2007, 2008, 2009
> and 2010 caused from a litany of delays, missed
> deadlines, broken promises, increased costs, and
> business interruptions costing Plaintiffs nearly $1
> million.
>
> * * *
>
> Plaintiffs aver they first began to suspect that
> they had been victimized in November 2012 [six
> years later], when Verticent, still having failed
> to deliver the ERP Software as promised, abruptly
> declared bankruptcy.

(<u>Id.</u>)(internal citations omitted). Defendants argue that when

the ERP software was not up and running by October of 2007,

LHI should have known they were damaged as a matter of law.

(<u>Id.</u> at 15). Therefore, as LHI filed the present action on

August 1, 2014, Defendants submit that LHI's claims are barred

by RICO's four-year statute of limitations. (<u>Id.</u> at 14–15).

LHI alleges, however, that it did not have actual notice of the RICO injury alleged until, at the earliest, 2012, when Verticent declared bankruptcy and it became clear that LHI would never receive functional ERP software. (Doc. # 41 at 20-23; Doc. # 1 at ¶ 105). To that end, LHI submits that it could not have discovered the alleged RICO injury because, prior to Verticent's bankruptcy, the only information that it could obtain was in the form of assurances by various ASA employees that the ERP software would work after further customization. (Doc. # 41 at 20).

> The installation of new software systems is routinely beset by unforeseen difficulties, and substantial delays are frustrating but not uncommon. When LHI experienced those delays, it reasonably thought that it might have suffered delay damages due to Verticent's breach of a contract. Nonetheless, LHI reasonably expected that, in exchange for the money it had paid Verticent, it would receive consideration in the form of working Software. Thus, LHI at that point had no reason to think that it had been injured in its business or property – the only type of injury cognizable under RICO. To the contrary, LHI did not know, or have reason to suspect, that it was not going to get anything of value in exchange for its payments until Verticent declared bankruptcy, an act that pulled back the curtain on Defendants' ruse.

(Id. at 19). Thus, according to LHI, it did not know, and had no basis to suspect, that Defendants had deprived it of

business or property until it became apparent that Verticent had no ability to or intention of delivering the promised ERP software, and therefore, the statute of limitations did not accrue until then. (Id.).

Upon review, the face of the Complaint fails to demonstrate that LHI's RICO claims are time barred. Rather, such a determination – whether the statute of limitations has run on LHI's RICO claims - is better suited for the summary judgment stage when this Court has the benefit of discovery and considering matters outside the four corners of the Complaint. Therefore, the Court denies Defendants' Motion on this ground. To that end, the Court declines to address whether the statute of limitations has tolled or whether the accrual rule is applicable under the circumstances.

G. **Whether Verticent is an Indispensable Party**

According to Defendants, the Complaint demonstrates that Verticent is a central player in this litigation. (Doc. # 27 at 22-23). As a result, Defendants submit that Verticent is a necessary and indispensable party, pursuant to Fed. R. Civ. P. 19. (Id.)(citing In re Apple iPhone 3G Prods. Liab. Litig., 728 F. Supp. 2d 1065, 1076 (N.D. Cal. 2010)); Fed. R. Civ. P. 19. Therefore, Defendants seek dismissal of this action for

LHI's failure to name Verticent as a Defendant.

According to LHI, however, RICO actors are joint tortfeasors, and joint tortfeasors cannot be indispensable parties. (Doc. # 41 at 23); Temple v. Synthes Corp., Ltd., 498 U.S. 5, 6 (1990)(finding that "it has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."); Roof & Rack Prods., Inc. v. GYB Investors, No. 13-80575-CV, 2014 WL 3183278, at *6 (S.D. Fla. July 8, 2014)(finding joint tortfeasors are not indispensable parties); United States v. Janke, No. 09-14044-CIV, 2009 WL 2525073, at *2 (S.D. Fla. Aug. 17, 2009)(same).

Fed. R. Civ. P. 19(a) provides as follows:

(a) Persons Required to Be Joined if Feasible.

(1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or

> (ii) leave an existing party subject to
> a substantial risk of incurring double,
> multiple, or otherwise inconsistent
> obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(A)-(B).

"Every circuit in the country that has addressed the issue has concluded that the nature of both the civil and criminal RICO offenses requires imposition of joint and several liability because all defendants participate in the enterprise responsible for the RICO violations." Allstate Ins. Co. v. Palterovich, 653 F. Supp. 2d 1306, 1334 (S.D. Fla. 2009)(citing United States v. Philip Morris USA, 316 F. Supp. 2d 19, 27 (D.D.C. 2004) (collecting cases)); see Oki Semiconductor Co. v. Wells Fargo Bank, 298 F.3d 768, 775 (9th Cir. 2002)("[h]olding RICO conspirators jointly and severally liable for the acts of their co-conspirators reflects the notion that the damage wrought by the conspiracy is not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole"). To that end, given the nature of joint and several liability, "it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." Temple, 498 U.S. at 7.

The Court notes that although "courts have held that joint tortfeasors need not all be joined in one lawsuit," as

set forth above, precedent in the Eleventh Circuit holds that
"a joint tortfeasor will be considered a necessary party when
the absent party 'emerges as an active participant' in the
allegations made in the complaint that are 'critical to the
disposition of the important issues in the litigation.'"
Barbachano v. Standard Chartered Bank Int'l (Americas) Ltd.,
No. 10-22961-CIV, 2014 WL 29595, at *4 (S.D. Fla. Jan. 3,
2014)(quoting Laker Airways, Inc. v. British Airways, PLC,
182 F.3d 843, 847-48 (11th Cir. 1999)). At this time, the
Court finds that the emergence of Verticent as an active
participant, and thus a necessary party, has not occurred.

Defendants' Motion is devoid of any assertions
challenging LHI's position that Defendants – along with
Verticent – are joint tortfeasors. Further, while Defendants
may have a defense to the claims raised by LHI based on
actions taken by Verticent, the Complaint on its face does
not allege that Verticent was anything more than a routine
joint tortfeasors, which would not require Verticent to be
named as a party to this action.

In addition, Defendants have failed to provide binding
authority illustrating why, under the present circumstances,
Verticent should be considered an indispensable party.
Instead, Defendants make general arguments in an attempt to

obtain their requested relief. Therefore, to the extent Defendants request that this Court find Verticent to be an indispensable and necessary party to this action, the Court declines to do so at this time.

The Court notes, however, that this case is in its infancy and discovery is ongoing. Thus, after the facts have been developed and the legal issues have been narrowed, Defendants may reassert their "indispensable party argument" by way of an appropriate motion. The motion should contain binding authority and a sufficient factual basis illustrating why Verticent should be considered an indispensable party to this action. As Defendants have failed to provide such information at this time, and the face of the Complaint does not provide that Verticent is anything other than a routine joint tortfeasors, this Court denies Defendants' Motion.

**H. <u>Subject Matter Jurisdiction Over State Law Claims</u>**

As Defendants' Motion is denied, this Court continues to have subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. Therefore, the Court declines to dismiss LHI's state law claims on the basis of lack of subject matter jurisdiction, as requested by Defendants.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendants' Motion to Dismiss Plaintiffs' Complaint (Doc. # 27) is **DENIED.**

(2)   Defendants have until and including **November 13, 2014,** to file their Answer to Plaintiffs' Complaint.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 30th day of October, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record